No. 25-20355

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

MELVIN MARTINEZ-GUARDADO,

Petitioner-Appellant

v.

HIROMICHI KOBAYASHI, In His Official Capacity as the Warden
Federal Detention Center Houston; THOMAS M. O'CONNOR, Trustee,
In His Official Capacity as a United States Marshal for Southern District
of Texas; MARCO RUBIO, Secretary, U.S. Department of State;
PAMELA BONDI, U.S. Attorney General,

Respondents-Appellants

_____

On Appeal From The United States District Court
For The Southern District of Texas
Houston Division, No. 4:25-CV-03305

_____

## UNITED STATES' RESPONSE IN OPPOSITION TO
## EMERGENCY MOTION FOR A STAY PENDING APPEAL

The United States of America, on behalf of the respondents, opposes

Petitioner-Appellant Melvin Martinez-Guardado's (Martinez) emergency

motion to stay the district court's order denying habeas relief pending

appeal to this Court. Martinez's motion for a stay should be denied

because he has not, and cannot, meet the requirements for a stay.

The Secretary of State (Secretary) has authorized Martinez's extradition to Honduras to answer criminal charges there for homicide. In reaching that decision, the Secretary determined that Martinez's extradition will not violate the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT or Convention), *adopted* Dec. 10, 1984, S. Treaty Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85, and its implementing statute and regulations. ECF 15-1.[1] Martinez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his extradition on grounds that he would suffer torture in violation of CAT and due process. ECF 7. The district court denied relief, holding under well-established jurisprudence that the Secretary's decision was unreviewable. ECF 18. Martinez seeks to stay that decision pending appeal to this Court. *See* Motion.

At bottom, Martinez's motion raises the question whether the judicial branch may second-guess the Secretary's substantive decision that he be surrendered for extradition. There is uniformity among courts

---

[1] Unless otherwise noted, documents cited by their ECF numbers are to the most recent district court proceeding below, Case No. 4:25-CV-03305. Documents in the earlier proceeding before the district court and the proceeding before the magistrate judge are cited by Case Nos. 4:24-CV-04862 and 3:24-MJ-00006, respectively.

that the answer is no. Although one circuit (the Ninth) recognizes that a fugitive may have a narrow liberty interest in ensuring the Secretary has complied with his statutory and regulatory obligations under CAT, even that Circuit would deny Martinez's petition.

There are no substantial questions at issue in this case. This Court should deny the motion for a stay pending appeal because the Secretary's conclusion that Martinez is not likely to be tortured if extradited is uniquely within the province of the Executive Branch, not the courts. Martinez cannot show he is entitled to a stay.

## I.    Legal background on extradition.

Under 18 U.S.C. § 3184, when the Government files a complaint charging a person in the United States with having committed a crime in a foreign state covered by an extradition treaty, a judge may issue an arrest warrant for the fugitive. If the judge determines that the Government's "evidence of criminality" is "sufficient to sustain the charge under the provisions of the proper treaty," the judge "shall certify . . . to the Secretary of State" that the Secretary may issue a surrender warrant. *Id.* A judge's certification that an extradition warrant may issue is not subject to direct appeal. *In re Metzger*, 46 U.S. (5 How.) 176, 191 (1847);

*see also In re Oteiza y Cortes*, 136 U.S. 330, 333-334 (1890). But the Supreme Court has permitted habeas review of extradition certifications, limited to determining whether the judge "had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

Thereafter, the decision whether to surrender the fugitive is committed to the Secretary of State. 18 U.S.C. § 3186 (providing that the Secretary "may" deliver the fugitive to the foreign government after issuance of an extradition certification). Under longstanding principles, the Secretary's decision to surrender a fugitive despite claims that the fugitive will face mistreatment in the requesting state is not subject to judicial review. *See Neely v. Henkel (No. 1)*, 180 U.S. 109, 122 (1901) (United States constitutional protections do not apply in foreign prosecutions); *Munaf v. Geren*, 553 U.S. 674, 700 (2008) ("Habeas corpus has been held not to be a valid means of inquiry into the treatment the [fugitive] is anticipated to receive in the requesting state."); *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980) ("'The ultimate

decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs."). Courts refer to this limitation as the "rule of non-inquiry." *See*, *e.g.*, *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

That rule respects the unique province of the Executive Branch to evaluate claims of possible future mistreatment at the hands of a foreign state, its ability to obtain diplomatic assurances of proper treatment (if warranted), and its capacity to provide for appropriate monitoring overseas of a fugitive's treatment. If the Secretary finds those protections adequate, "[t]he Judiciary is not suited to second-guess such determinations." *Munaf*, 553 U.S. at 702. "It is not that questions about what awaits the [fugitive] in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Kin-Hong*, 110 F.3d at 111.

In 1984, the United Nations General Assembly adopted the Convention Against Torture. Article 3 of CAT provides that no state party shall "extradite a person to another State where there are substantial grounds for believing that he would be in danger of being

subjected to torture." Art. 3, 1465 U.N.T.S. 114. That article directs the "competent authorities," in making that determination, to "take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights." *Id.*

The Senate gave its advice and consent to CAT subject to the declaration that "Articles 1 through 16 of the Convention are not self-executing." 136 Cong. Rec. 36,198 (1990). Thus, "[t]he reference in Article 3 to 'competent authorities' appropriately refers in the United States to the competent administrative authorities who make the determination whether to extradite, expel, or return. . . . Because the Convention is not self-executing, the determinations of these authorities will not be subject to judicial review in domestic courts." S. Exec. Rep. No. 30, 101st Cong., 2d Sess. 17-18 (1990).

In implementing Article 3 of CAT, Congress enacted Section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, Div. G, Subdiv. B, Tit. XXII, § 2242, 112 Stat. 2681-822 (8 U.S.C. § 1231 note). Section 2242(a) declares it to be the "policy of the United States not to expel, extradite, or otherwise effect the

involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." The next subsection directs "the heads of appropriate agencies" to "prescribe regulations to implement the obligations of the United States under Article 3" of CAT, "subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention." § 2242(b), 112 Stat. 2681-822.

FARRA bars judicial review of those regulations, and it expressly states that the statute does not create jurisdiction for judicial review of claims under CAT, the statute, "or any other determination made with respect to the application of the policy set forth in [Section 2242(a)]," except as part of the review of a final order of removal in immigration proceedings, or if authorized by the implementing regulations promulgated pursuant to the statute. § 2242(d), 112 Stat. 2681-822. With respect to extradition, the State Department has promulgated a final rule that, among other things, notes the obligations imposed by CAT, 22 C.F.R. 95.2(a); explains that, in implementing those obligations,

the Secretary considers whether it "is more likely than not" that the fugitive will be tortured if extradited, 22 C.F.R. 95.2(b); prescribes the procedures for the Secretary to review allegations of torture, 22 C.F.R. 95.3; and provides that the Secretary's surrender decisions "are matters of executive discretion not subject to judicial review," 22 C.F.R. 95.4.

Congress again addressed judicial review of claims under the Convention when it enacted 8 U.S.C. § 1252(a)(4) as part of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Tit. I, § 106(a)(1)(B), 119 Stat. 310-311. That provision states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be *the sole and exclusive means for judicial review* of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section.

8 U.S.C. 1252(a)(4) (emphasis added).

## II.  Factual and procedural history of the present case.

On March 23, 2022, a judge in Honduras issued an arrest warrant for Martinez because multiple witnesses saw Martinez shoot and kill a man in a liquor store on December 19, 2020. *See* 3:24-MJ-00006, ECF 1

at 2-3, 106-111. Honduras requested Martinez's extradition from the United States pursuant to 18 U.S.C. § 3184 and the extradition treaty between the two countries.[2]

The Government filed its complaint in support of extradition on September 24, 2024. 3:24-MJ-00006, ECF 1. The Government also submitted a declaration from the U.S. Department of State stating, *inter alia*, that Honduras had provided notice of its decision to terminate the Extradition Treaty as of March 1, 2025, although it reserved the right to withdraw the termination notice. 3:24-MJ-00006, ECF 1 at 20-21. The termination date subsequently was extended to February 7, 2026. 4:24-CV-4862, ECF 7.

Martinez was arrested on Honduras's extradition request on September 27, 2024, in the Southern District of Texas.

On November 1, 2024, the magistrate judge held an extradition hearing under 18 U.S.C. § 3184. 3:24-MJ-00006, ECF 22. The only argument Martinez raised was that the Extradition Treaty was not currently in full force and effect. The magistrate judge rejected

---

[2] Convention Between the United States and Honduras for the Extradition of Fugitives from Justice, U.S.-Hond., Jan. 15, 1909, 37 Stat. 1616, *as amended by* the Supplementary Extradition Convention Between the United States of America and the Republic of Honduras, Feb. 21, 1927, 45 Stat. 2489 (the "Extradition Treaty").

Martinez's argument and issued the Certification. 3:24-MJ-00006, ECF 25. The magistrate judge found that Honduras's extradition request satisfied the requirements of the Treaty; that Martinez's conduct fell within the scope of the Treaty; and that probable cause existed to believe Martinez committed the Honduran offense of homicide. *Id.*

Martinez filed his first habeas petition challenging the Certification on December 6, 2024, on the ground that he would be tortured while in custody if extradited to Honduras. 4:24-CV-4862, ECF 1. He also simultaneously submitted materials to the Secretary seeking denial of extradition.

On April 3, 2025, the district court dismissed with prejudice any claims regarding the certification of Martinez's extradition. The Court dismissed without prejudice Martinez's CAT and FARRA claims because, in accordance with this Court's precedent, separation of powers and the rule of non-inquiry restrained its review. Finally, it dismissed without prejudice Martinez's due process claim, holding the claim was not ripe for adjudication because the Secretary had not yet decided whether to issue a surrender warrant. 4:24-CV-4862, ECF 9.

The Secretary (through his designee) denied Martinez's request,

determining that Martinez should be extradited to Honduras and that his extradition will not violate CAT. On July 14, 2025, an Attorney Adviser in the Department of State's Office of the Legal Adviser sent Martinez a letter stating that, "[f]ollowing a review of all pertinent information, including the materials and filings submitted to the Secretary and the United States District Court for the Southern District of Texas on behalf of [Martinez], on July 7, 2025, the Deputy Secretary of State decided to authorize [Martinez's] surrender to Honduras, pursuant to 18 U.S.C. § 3186 and the Extradition Treaty between United States and Honduras." ECF 15-1.

The letter explained that a "decision to surrender a fugitive who has made a claim of torture invoking the Convention reflects either a determination that the claimed 'torture' does not meet the definition set forth in 22 C.F.R. § 95.1(b) or a determination that the fugitive is not 'more likely than not' to be tortured if extradited." *Id.* The letter "confirm[ed] that the decision to surrender Mr. Martinez Guardado to Honduras complies with the United States' obligations under the Convention and its implementing statute and regulations." *Id.*

Martinez then filed the instant habeas petition on July 17, 2025,

ECF 1, 3, which he later amended.  ECF 7, 10, 11, 12.  He challenged his extradition on the sole ground that he will likely face torture in the Honduran prison system if returned to that country.  ECF 7.  He alleged that the Secretary's decision authorizing his extradition violates CAT, FARRA, and the Fifth Amendment's Due Process Clause of the U.S. Constitution.  ECF 7, at 2.  He also alleged that depriving him of habeas review of the Secretary's decision would violate the Suspension Clause of the U.S. Constitution.  *Id.*  The Government filed a response.  ECF 15.

The district court denied the petition.  ECF 18.  The court observed that numerous courts have held that the REAL ID Act, which amended FARRA, deprived courts of habeas jurisdiction over CAT claims.  ECF 18, at 14-15.  Relying on Supreme Court and Fifth Circuit precedent, as well as sister circuit decisions, the court held that "the rule of non-inquiry constrains this Court from second-guessing decisions that are within the Executive Branch's exclusive purview."  *Id.* at 16-17.

The Court acknowledged Martinez's argument that the Ninth Circuit recognized a "'narrow liberty interest: that the Secretary comply with [his] statutory and regulatory obligations.'"  *Id.* at 15-16 (quoting *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en

banc)). Nevertheless, the court held that the State Department's letter to Martinez sufficed to show he had received due process. *Id.* at 22-24.

The court concluded that "the Executive Branch, through the Secretary of State, and not the courts, makes the factual determination regarding the torture issue, and such a determination is not subject to judicial review on the merits." *Id.* at 20 (citing *Escobedo*, 623 F.2d at 1107). The court declined to revisit the factual basis of the Secretary's decision regarding the torture claim. *Id.* at 22.

The district court dismissed Martinez's petition but stayed its order for seven days. *Id.* at 25. This Court then issued a temporary administrative stay pending further order and directed the Government to respond to the motion for stay pending appeal. No. 25-20355, ECF 35.

## III. Legal standard for a stay.

This Court considers four factors when deciding a motion to stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Texas v. United*

*States*, 126 F.4th 392, 422 (5th Cir. 2025) (citation omitted). "The first two factors of the traditional standard are the most critical." *Nken* v. *Holder*, 556 U.S. 418, 434 (2009).

The party requesting a stay "bears the burden of showing that the circumstances justify" it. *Id.* at 433. A stay depends "upon the circumstances of the particular case'" and is "not a matter of right, even if irreparable injury might otherwise result." *Texas*, 126 F.4th at 421 (quotation omitted).

A stay "may be called for when we are 'faced with serious legal questions that merit careful scrutiny and judicious review.'" *Id.* at 422 (quoting *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014)). The movant must "only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay."[3] *Id.*

---

[3] Martinez asserts that, through this language, this Court has recognized a less demanding standard for a stay, Motion, 10, but the cases he cites nevertheless provide for the usual four-factor test. *See Texas*, 126 F.4th at 421-22; *Bryant*, 773 F.3d at 57; *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983).

## IV. Discussion.

### A. Martinez cannot show a likelihood of success on the merits.

Martinez argues that he has made a substantial case on the merits for purportedly three claims: the district court erred in finding no jurisdiction to review his CAT and due process claims; it erred in not reviewing the Secretary's factual findings; and it erred by not finding the Secretary's surrender decision violated CAT and due process. Motion, 12. Although stated as separate "claims," they are really subsumed in one issue: whether the Secretary's surrender decision is subject to judicial review either under CAT/FARRA or due process. The clear answer is no.

### 1. The rule of non-inquiry precludes review.

Each circuit to have addressed the issue has recognized that a habeas court may not review the substance of the Secretary's determination that a fugitive, if extradited, is not more likely than not to be tortured. *E.g.*, *Kapoor v. DeMarco*, 132 F.4th 595, 612-13 (2d Cir. 2025); *Sridej v. Blinken*, 108 F.4th 1088, 1093 (9th Cir. 2024); *Hilton v. Kerry*, 754 F.3d 79, 84-85 (1st Cir. 2014); *Omar v. McHugh*, 646 F.3d 13, 19 (D.C. Cir. 2011); *Mironescu v. Costner*, 480 F.3d 664, 676 (4th Cir. 2007). Notably, no court has ever reviewed and overruled the Secretary's

determination that a fugitive's extradition would comply with CAT.

Review of a fugitive's claim that he will be mistreated if extradited falls outside the narrow scope of the extradition magistrate judge's authority to certify an extradition. "[F]ederal courts have [traditionally] refused to consider questions relating to the . . . treatment that might await an individual on extradition." *In re Manzi*, 888 F.2d 204, 206 (1st Cir. 1989).

Courts, including this one, have instead "chosen to defer these questions to the executive branch because of its exclusive power to conduct foreign affairs." *Id.* at 206; *see Escobedo*, 623 F.2d at 1107; *Sindona v. Grant*, 619 F.2d 167, 174-75 (2d Cir. 1980); *Hoxha v. Levi*, 465 F.3d 554, 563-64 (3d Cir. 2006); *accord Peroff v. Hylton*, 563 F.2d 1099, 1102 (4th Cir. 1977).

Martinez claims that Congress has not restricted a habeas court's review of the Secretary's surrender decision and that other courts, including this one, have implicitly recognized such jurisdiction. He misconstrues the case law. Martinez's claim that this Court's *Escobedo* decision allows him to proceed with his due process habeas claim is belied by that opinion's express language: "the Executive's discretionary

determination to extradite a fugitive . . . is not generally subject to judicial review." 623 F.2d at 1105. Indeed, this Court recognized that "[r]eview by habeas corpus . . . tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the Executive Branch to decide." *Id.* (quotation omitted). Far from addressing the merits of Escobedo's claim that he might be tortured or killed if extradited, this Court held: "'the degree of risk to (Escobedo's) life from extradition is an issue that properly falls within the exclusive purview of the executive branch." *Id.* at 1107.

## 2. Claims under CAT/FARRA are clearly precluded from judicial review.

Martinez argues CAT and FARRA lack clear statements foreclosing habeas challenges to executive decisions. Motion, 14. Courts have consistently held otherwise. The Second, D.C., and Fourth Circuits have found no jurisdiction because the REAL ID Act precludes judicial review, *see Kapoor*, 132 F.4th at 608; *Omar*, 646 F.3d at 17-18, or because FARRA precludes it, *see Mironescu*, 480 F.3d at 673-77.

Again, FARRA provides in relevant part that "nothing in this section shall be construed as providing *any court jurisdiction* to consider or review claims raised under the [CAT] or this section, or any other

determination made with respect to the application of the policy set forth in subsection (a), *except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. [§] 1252)*." FARRA § 2242(d) (emphasis added). The instant case *is not* one involving a final order of removal under the INA, and courts have recognized the above text makes plain Congress's expectation that courts in extradition cases would be "precluded from considering or reviewing [CAT or FARRA] claims." *Mironescu*, 480 F.3d at 674; H.R. Conf. Rep. 105-432, at 150, 105th Cong., 2d. Sess. (1998) ("The provision agreed to by the conferees does not permit for judicial review of the regulations or of most claims under the Convention."). Contrary to Martinez's assertion (Motion, 15), the fact that FARRA does not specifically mention habeas review is irrelevant, particularly given the statute's clear language precluding judicial review in any context other than immigration proceedings.

Further, the State Department regulations prescribed pursuant to FARRA's Section 2242(b) make clear that CAT claims are not judicially-reviewable in extradition cases. The regulations expressly state that "[d]ecisions of the Secretary concerning surrender of fugitives for

extradition are matters of executive discretion not subject to judicial review." 22 C.F.R. § 95.4. The regulations also make clear that the provisions in FARRA providing for judicial review in the context of immigration removal proceedings are "not applicable to extradition proceedings." *Id*.

As for the REAL ID Act, it states: "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the *sole and exclusive means for judicial review* of any cause or claim under the [CAT]." 8 U.S.C. § 1252(a)(4) (emphasis added). This provision constitutes "a clear statement of congressional intent to bar all habeas jurisdiction over CAT claims, with narrowly delineated exceptions not relevant here." *Kapoor*, 132 F.4th at 608.

In sum, although the exact reasoning may differ, courts routinely hold the Secretary's decision is unreviewable. *See*, *e.g.*, *Omar*, 646 F.3d at 15, 24 (regardless of the source of law invoked, the rule of non-inquiry bars habeas relief where judicial review would require a court to second-guess the Secretary's assessment).[4]

_____

[4] The Seventh Circuit's decision in *Venckiene v. United States*, 929 F.3d 843 (7th Cir. 2019), is not to the contrary. *Contra* Motion, 14. There, the Court believed a due process claim challenging the Secretary's decision was reviewable "at least in principle," but it also expressed concerns as to whether a "limited" review was

### 3. Even under the Ninth Circuit's *Trinidad* decision Martinez received all process that was due.

Despite clear limiting language in FARRA and the REAL ID Act, Martinez cites the Ninth Circuit's decision in *Trinidad* for the proposition that FARRA "'lacks sufficient clarity'" to limit habeas jurisdiction and that the REAL ID Act "'can be construed as being confined to addressing final orders of removal, without affecting federal habeas jurisdiction.'" Motion, 15-16. That contention is unsound. Again, the REAL ID Act's text is unqualified, making it plain that a petition for review of a removal order is the "sole and exclusive means" for judicial review of claims under CAT. 8 U.S.C. 1252(a)(4).

A contrary interpretation would violate the cardinal principle of interpretation "that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (citation omitted). Section 1252(a)(4) would be redundant if its limitation on judicial review applied only in the context of removal proceedings. The very next subsection of the statute already bars habeas

---

permissible after the Supreme Court's *Munaf* decision, and it determined it need not decide the outer boundaries of review. 929 F.3d at 860-61.

claims in removal proceedings. 8 U.S.C. 1252(a)(5). If subsection (a)(4)'s limitation on habeas review of claims under CAT applies only to claims raised in the context of removal proceedings, then subsection (a)(4) would be entirely subsumed by subsection (a)(5)'s broader limitation on all habeas review of removal orders.

In any event, even under *Trinidad*, Martinez's claims fail. There, the record contained "no evidence that the Secretary [had] complied with the procedures" to ensure the fugitive would not face torture if extradited. *Trinidad*, 683 F.3d at 957. The Ninth Circuit made clear, however, that such an interest would be "fully vindicated" by the Secretary's filing of a declaration confirming that its decision complied with CAT. *Id.*

Here, the record contains the evidence the Ninth Circuit concluded was missing. Specifically, the record includes a State Department letter from "the official responsible for managing the Department's responsibilities in this case." ECF 15-1. The letter explicitly "confirm[ed] that the decision to surrender [Martinez] to Honduras complies with the United States' obligations under the Convention and its implementing statute and regulations." *Id.* Accordingly, Martinez has received all the process that would be due under *Trinidad*, and his habeas petition would

have been rejected even in the Ninth Circuit. *Sridej*, 108 F.4th at 1090-1093 (holding that "a declarant with knowledge that the Secretary or his designee has made the determination required by the CAT need only verify that the Secretary 'has complied with her obligations'").

### 4. Martinez incorrectly relies on the Suspension Clause.

Martinez also errs in asserting that any finding that the district court lacked habeas jurisdiction to review his due process and CAT claims violates the Suspension Clause. Motion, 12. Such a claim rests on a fundamentally incorrect understanding of the role of habeas corpus in the extradition context.

As a matter of history and practice, a habeas court's role does not extend to issues concerning the treatment a fugitive will receive in a foreign state. *See DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (rejecting a Suspension Clause claim where "the relief requested falls outside the scope of the writ as it was understood when the Constitution was adopted"). At most, a habeas court's role in that context—based on a statutory conferral of habeas rights, not the Constitution, *see id*. at 128-130—has been the far more limited one of reviewing the complaint to determine whether the request falls within the scope of the treaty and is

supported by probable cause. *Fernandez*, 268 U.S. at 312. Martinez had access to the habeas court's jurisdiction to contest those issues. The Constitution requires no more.

**B.** **Martinez has not shown he will suffer irreparable harm absent a stay.**

As with likelihood of success on the merits, a showing of irreparable harm requires consideration of individual circumstances. *See Nken*, 556 U.S. at 433-34. Merely "showing some 'possibility of irreparable injury'" is insufficient. *Id.* at 434-35 (citation omitted). Martinez asserts he will suffer irreparable injury because he will be tortured upon return to Honduras. Motion, 22. His only argument is that he submitted an expert's affidavit and a 2023 State Department report identifying "credible reports of life-threatening prison conditions," but the Government offered no competing evidence. Motion, 20.

Martinez's assertion is conclusory and arguably inadequately briefed. In any event, the Government offered the State Department letter, which confirmed the Secretary had considered "all pertinent information" submitted on Martinez's behalf. ECF 15-1. Yet, the Secretary concluded it was not "more likely than not" Martinez would be "tortured." *Id.* At best, Martinez's motion shows nothing more than a

mere "possibility" of harm due to prison conditions, which is insufficient to meet his burden to show irreparable harm. *Nken*, 556 U.S. at 434.

## C. The equities do not support a stay.

The third and fourth *Nken* factors, prejudice to the nonmoving party and the public interest, "merge when the Government is the opposing party." 556 U.S. at 435. The role of "[the Government] does not make the public interest … negligible." *Id*. Although "there is a public interest in preventing [persons] from being wrongfully [surrendered]," that is no basis for assuming the "absence of any injury to the public interest" if a stay is granted. *See id*. at 436. Therefore, "[a] court asked to stay [surrender] cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." *Id*. (citation omitted).

Martinez's equities claim seriously undervalues the public interests at stake. Motion, 21. "The surrender of a fugitive, duly charged in the country from which he has fled with a non-political offense and one generally recognized as criminal at the place of asylum, [such as Martinez's commission of homicide,] involves no impairment of any legitimate public or private interest." *Factor v. Laubenheimer*, 290 U.S.

276, 298 (1933).  Rather, "the public interest will be served by the United States complying with a valid extradition application . . . under the treaty," because "compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order." *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986).

Judicial review of the treatment that a fugitive is likely to receive in a foreign state—after the Secretary has determined that torture is not more likely than not to occur—would threaten to disrupt the proper balance between the branches by requiring the Judiciary to pronounce foreign-policy judgments that are the province of the political branches, possibly preventing the Nation from speaking with one voice on sensitive matters of foreign policy.  *See Munaf*, 553 U.S. at 702.  And delaying extradition to entertain a claim that U.S. courts should engage in that sort of intrusive inquiry could itself impair foreign relations.

Delay imposes serious costs on the sound operation of the extradition system.  Indeed, the United States has a strong interest in having extradition requests resolved without undue delay, both to comply with our treaty obligations, and to further our reciprocal interest in having other Nations cooperate swiftly with our extradition requests.  *See*

*Venckiene*, 929 F.3d at 865 ("Failure to comply with foreign nations' proper extradition requests threatens to erode the effective force of these treaties.").

Further, Martinez's claim that no harm will result to the Government because it may pursue extradition later if this Court disagrees with his appellate claims is belied by the unique fact that, absent any further action by the treaty partners, the Extradition Treaty will terminate in approximately six months, on February 7, 2026. If the treaty terminates before Martinez is extradited, he can no longer be extradited to Honduras. *See* 18 U.S.C. § 3181(a) ("The provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government."). This creates the perverse incentive for Martinez to extend the litigation and "run out the clock."

This case has been pending for almost one year. Further delay is unwarranted given the unlikelihood additional proceedings would preclude extradition. Granting a stay under these circumstances— despite contrary determinations from the Executive Branch that

extradition is proper—causes undue delay, undermines international relations, and threatens national interests.

## V. Conclusion.

For these reasons, the United States requests that this Court deny Martinez's motion for a stay.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

s/*John A. Reed*
JOHN A. REED
Assistant United States Attorney
U.S. Attorney's Office for the
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I certify that on August 28, 2025, an electronic copy of the United States' unopposed motion to view sealed documents was served by notice of electronic filing via this court's ECF system upon opposing counsel, Assistant Federal Public Defender R. Victoria Garcia-Cross.

s/*John A. Reed*
JOHN A. REED
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,185 words, excluding any parts exempted by Fed. R. App. P. 27(a)(2)(B).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3. This document complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4. This document complies with the electronic submission of 5th Cir. R. 25.2.1, because it is an exact copy of the paper document.

5. This document has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.


s/ *John A. Reed*
JOHN A. REED
Assistant United States Attorney